May it please the Court, my name is Gustavo Joshua Alex, and together with Bob Mahler, I represent Petitioner-Appellant Mr. Oppen. If I may, I'd like to reserve three minutes for rebuttal. In her closing argument, the prosecutor acknowledged that the case rises and falls on the credibility of the two co-defendants, Fulton and Avramson. Their credibility was the key to the case, and the jury is charged with weighing the witnesses' credibility. Here is the information that the jury had before them before closing argument. They knew both of these co-defendants had lengthy criminal records. They knew they were both in a tough position, as they were both initially charged with murder in the first degree. They were self-proclaimed drug addicts. And they couldn't get their story straight. They considered themselves partners. Avramson testified he procured the gun. He also testified he's the one who loaded the gun. He had possession of the gun right before the murder. He's the one that was supposed to hide the gun, and he's the one that hatched the plan to rob these folks. He also said that after the murder, his co-defendant, Fulton, hid the rifle. Fulton, on the other hand, says he didn't hide the rifle. He gave the rifle to Kathy Thomas that was Avramson's girlfriend at the time. Fulton also told the police right after his arrest that he washed his clothes after the murder. He was worried about some residue on his clothing. The other thing he couldn't get straight was the issue about the masks. Now, Fulton says to the cops when he's first arrested that Oppen wasn't wearing a mask at the time of the shooting. But the other witness that was in the home at the time of the shooting testified that both of the people who entered the homes had masks on, black masks. So Fulton flip-flops. He then says during direct that Oppen was, in fact, wearing a mask at the time of the shooting. On cross-examination, he goes back. Suddenly, Oppen wasn't wearing a mask. And then on redirect, he can't remember, but he thinks he was. Now, if you look at that compared to Avramson's testimony, Avramson, who claims he was in the truck when these two folks went into the home to perform the robbery, he says that Oppen didn't have the mask. And the mask that was actually recovered from Mr. Oppen's car was green. It wasn't black. That's what the jury had before them before closing argument. Now, in her closing argument, the prosecutor bolstered the witness's credibility. She gave him a big boost. She put her prestige and the prestige of her office behind these two witnesses. It's the jury's duty to carefully consider the witness's testimony and their credibility. She took that away from them. The first instance of vouching, she claims that if you don't, she tells the jury, if you don't like the deal they got, blame me. Blame my office. But don't hold it against the co-defendants. This is problematic for two reasons. First, it puts the credibility of the office behind these two witnesses. And secondly, it implies that there is extrinsic evidence outside of what the jury sees that supports the witness's testimony. She's essentially saying to them, a reasonable juror would take it this way, that we've looked carefully at these two defendants, and we've determined that they're telling the truth. A reasonable juror will think the prosecutor has other methods of determining truth. Was this remark objected to at trial? It was not, Your Honor. Were any of the remarks of which you complain objected to at trial? They were not, Your Honor. Our position would be that that shouldn't matter here. It shouldn't matter because this isn't an issue of procedure. We're not considering whether or not it was waived. Why there was no objection, I don't know the answer to. In United States v. Currie, there was an objection, and this Court said even still the vouching was inappropriate and reversed. My understanding is, at least as to two of the prosecutorial comments that you object to, they were also not raised before the Washington Court of Appeals. Am I correct in that understanding? No, Your Honor. Both of the claims, both of the statements that we state are vouching were before the Court of Appeals. They were argued by Mr. Oppen himself in a pro se brief, I believe. They were both before the Court of Appeals. The first statement, we say the rising and fall statement. We don't argue that it was vouching. We say that statement amplified the subsequent vouching. It made it far more substantial and injurious. Well, what about the question we have to answer is we're looking at the Washington Court of Appeals, and their explanation, for example, on that statement is, well,  The second one, which they didn't view as vouching, is did they have a reason to lie? Yeah, probably they were getting a deal or some time cut off of their sentence. Again, the Washington Supreme Court doesn't really view that as vouching. Why is that an unreasonable application of Supreme Court law? Berger v. United States, 1935 case that laid down the framework for vouching, it says that jurors have special confidences in the prosecutor. Consequently, a prosecutor can't make improper suggestions to the jury, especially when it comes to personal knowledge. That's what happened here, and that's where the Court of Appeals got it wrong. But that's not, I mean, with the Court of Appeals, that isn't vouching, is it? I mean, they, the principle of Berger, I think, they were applying with the various cases they cited, and we have to apply it as well. But why is it unreasonable to say that the prosecutor isn't really vouching in that situation, and then leaving you the one where it seems to me is clear vouching, that is, I think they were telling the truth. That's kind of flat-out vouching, isn't it? The second statement is completely flat-out vouching. But if we're left only with that statement, if we were to say, at least on the first two, the Court of Appeals did not unreasonably apply Supreme Court law, and then we're left with the third in which they apply the law and they agree with you, then the question becomes whether the one statement is enough to tip the verdict, correct? We would say that that one statement alone is enough. The case was so close. If you look at it, the only thing that the jury had were these statements by these self-proclaimed drug addicts, robbers, people who had a lot of time they had to save. That one statement, if you look at it in the context of the closing argument and where it came, was so critical that our position would be that it had an impact on the jury verdict. Even alone, that statement is enough. We think that the second statement that we point to in our brief, the one about the plea bargaining, is vouching. United States v. McCoy, this Court's opinion, discusses a similar situation in which the prosecution was attempting to explain away a government deal. United States v. McCoy discusses that it's inappropriate in that context of a close trial. It suggests to the jury that there is extrinsic evidence not before them that supports the testimony. That's what we have here. She says, if you don't like the plea bargain, hold it against me. Hold it against my office. But if you believe them, you have to convict. A reasonable jury would see that and think, the prosecutor knows something I don't. She's the expert. She has tools at her disposal that we don't have. We're going to believe her. So she takes that factor away from the jury, this duty that they have to weigh the credibility, and puts it on herself. You're at a minute and 30. You said you wanted to reserve. I didn't want to interrupt you, but you have about a minute and a half left. Do you want to reserve it for rebuttal? I would like to. Thank you, Your Honor. Thank you very much for your argument. We'll hear from the Respondent at this time. Mr. Sampson? Good morning. Good morning, Your Honor. May it please the Court, John Sampson, Assistant Attorney General, representing the Respondent. The district court correctly denied relief because Mr. Oppen is not entitled to relief because the state court decision was a reasonable application of Supreme Court precedent. The third statement really is vouching, isn't it? Yes. The state court did find it was an improper argument. It was vouching. She did say, I think they are telling the truth. But she then said, and I think you will find they are telling the truth also, if you look at the single statement in isolation, it's vouching. But if you look at it in the context of the entire trial, her entire argument, the court's instructions to the jury that they are the sole determiners of credibility, that arguments are not evidence, and that they have to make a decision on the evidence, it did not, that single isolated comment did not render the trial unfair, and it did not cause actual prejudice. It's clear a prosecutor shouldn't do something like this, right? Yes, Your Honor. How do courts ensure that they don't? The defense counsel, if they think it's an egregious statement, can make an objection and ask for a curative instruction, and the court can give a curative instruction. How can we as supervising courts make sure that this doesn't happen? I don't think it's possible to make sure that it never happens. Well, there's one way, isn't there? There is, but the U.S. Supreme Court, in the case cited by Petitioner's brief, United States v. Young, said the remedy is not to reverse the conviction. It's to exercise supervisory powers. But I must remind the Court, with all due respect, you do not exercise supervisory powers over the State courts. Your power here is limited to determining whether the State court adjudication was reasonable. There is a way for the State courts to supervise the lower courts and to instruct them on how to prevent this error from occurring. There is a way for this Court to instruct the Federal district court. If we affirm the denial of habeas relief, aren't we telling prosecutors that if you just do it once, you can probably get away with it? No, Your Honor. What you're telling the prosecutors is that this is improper and that if it's egregious enough, the conviction will be reversed. But this case, it's not so egregious that it rendered the entire proceedings unfair and it did not cause actual prejudice. It was an improper statement. I'm sure that I have made improper statements in the course of closing arguments in cases. I don't do criminal prosecution, but I'm sure I've made misstatements of the law or misstatements of the fact. That itself is not enough to reverse a conviction that has been affirmed by the State courts on direct appeal. You know, it's interesting along those lines, though, because we do see a lot of A prosecutor made the same arguments you're making now, but kept saying, look, in this case, they didn't find it. It didn't reverse. This was the State. It didn't reverse. And if you look at it, we said, well, it's not plain error or we can't reverse this because of our deferential standard of habeas. It certainly doesn't stand for the proposition that it's error. But oftentimes, they get cited to us for that very proposition. So he made the same argument you're making, but he said, well, yeah, but in all these cases, you didn't reverse us. I think it's frustrating sometimes from this point of saying, well, how do you communicate that this is really error? I think that the Court can strongly tell the State that this is error, but that is not the same as reversing the conviction. Let me ask you, obviously, because we are a Federal court, this came out of Skagit County Superior Court, as I understand. Does the Attorney General's office have any procedure when these habeas cases come down from the circuit of how they communicate with the county prosecutor whose office the case came from? Informally, we do, Your Honor. We talk with the prosecutors and tell them this has been an issue. You need to watch this in future cases. I think the State court of appeals told the prosecutors in this case this was an improper argument. This should not be said. But at this stage, this case, I don't have when the trial occurred, but it was several years ago. I do not even know if this prosecutor still is with the county or if she's still even a prosecuting attorney. But at the end of the day, if we were to affirm the denial of habeas relief here, the two-sentence summary in a prosecutorial manual would probably say, held. Isolated statement. I think the witness is telling the truth insufficient to warrant habeas relief. Right? That would be an accurate summary, Your Honor. And the difficulty is then the line gets moved a little bit. You say, okay, what can you say in closing argument? You go to the seminar. And you say, well, in this case, they said it was okay and isolated. So if you want to use this tactic, they've gotten away with it in this case, this case, this case. Because I've seen some seminars that say that. And the difficulty is, I mean, apart from judicial integrity and integrity of the system, is that in drug deal cases or cases where you have an informant, this always comes up. The credibility of the informing witness to co-defendant who pleads is the key issue. And it is very tempting for the prosecution to use those tools to bolster the credibility of a witness that most people would find incredible, particularly through the use of the plea bargain, saying, well, part of the bargain is he has to tell the truth. And that's where it wasn't said, we didn't say that, or the prosecutor didn't say that in this case. But United States v. Rutberg, for example, we found that was plain error because it implied the independent mechanism for truth verification that existed outside the jury court. So it's all problematic. But those are concerns that we have. And I do understand the court's concerns. And in a perfect world, this statement would never have been made by the prosecutor. But in reviewing the case and in reviewing the validity of the conviction, the court, the U.S. Supreme Court said, has repeatedly said, you have to look at the entire argument, at the entire trial, including the court's instructions to the jury, and the other statements made by the prosecutor. The prosecutor told the jury, look at the evidence. In determining whether they're telling the truth, look at the other evidence. This other evidence shows they're telling the truth. She said, you determine whether they are telling the truth. The court said, you determine whether they are telling the truth. The U.S. Supreme Court, in the Young case cited by Petitioner, acknowledged that these improper vouching statements should not occur. And if defense counsel had raised an objection, the trial court could have then properly remedied the situation. But that's not enough to reverse the conviction. And the Respondent's position is that the State court adjudication was a reasonable application of Young for which it should be denied. I think we understand your argument. Thanks for your argument today. We'll hear rebuttal at this time. Thank you. Thank you. The State points out that the prosecutor said you've got to look at the other evidence after making the vouching comment. The State, in its brief, cites 154 ER to 157 ER. The only other evidence that is besides the testimony is the fact that there were rifle rounds recovered from the floor of the apartment. No one says that the rifle was the one who killed the unfortunate victim. And the other evidence at point two is the masks. And we've already talked about the mask issue. Did you raise an effective assistance of counsel claim in the habeas petition? No. I don't believe so, Your Honor. Any reason why? I don't know. When we were granted the COA, it was only on this issue. That's when we became involved. Did you seek an expanded COA? No, Your Honor. Okay. This Court consistently has said vouching is inappropriate. The very first line of this Court's opinion incurs, we have said it before and we shall say it again, a prosecuting attorney may not and should not vouch for a witness. Your Honor raised a very critical question. How do we ensure that this doesn't happen? Well, the only way to do that is to reverse. Well, there is another way. Yes, Your Honor. There is another way. Defense attorneys can get up on their feet when this happens and say, Your Honor, I object. This is improper argument. I ask the jury be instructed right now to disregard that statement. And I think most trial judges would respond to that and then ask for an additional instruction telling the jury that they absolutely must disregard that kind of statement. But neither of those were done here, right? Why they were done, I don't know, Your Honor. But I don't think that that should be the focus. The fact that there wasn't an objection shouldn't matter here. If you look at United States v. Kerr, there wasn't an objection. And the Court still reversed because of the vouching when the circumstances are such as this. We have told the prosecutor our concerns about not having these cases come back. There is an equal concern on the defense side of things to make sure that they don't come back, and that's to be aggressive on behalf of your client. And apparently that was not done here, right? Well, why that wasn't done, I don't know. Perhaps the defense attorney didn't want to draw further attention to the vouching. I can't speak for you. That's a trial risk. You know, we can, in the Federal courts, say to district courts, you have a sua sponte duty to intervene even in plain error cases. But that's a, as Mr. Sampson points out, that's a different matter from imposing that on State courts over whom we have no jurisdiction. And it may well have been a judgment call on reflection. People often don't interrupt in closing arguments for obvious reasons because things get highlighted. And if that's a judgment call that's made, then you do forego the opportunity to have the court tell the jury what the law is, which is that this is improper. But the difficulty with saying the only remedy is to reverse is that would basically would it not overwrite our general principle that there can be constitutional error, but in many cases of constitutional error, if it's found nonprejudicial, we affirm. Isn't that basically the setup that we operate under? That's right. So I'm not sure why reversal would be the only remedy here. Well, our position would be that in this case, it was so prejudicial that that's why the Court of Appeals got it wrong. Exactly what Berger feared would happen is what happened here. You have a closed case that hinges on the testimony of an accomplice with a long criminal record. Prosecutor put her thumb on the scale of justice and favored her. And the result was this conviction. So our position, and we ask this Court if it would please reverse the district court and grant the writ. Thank you for your argument. Thank both sides for their argument, which were helpful today. Case just finished.
judges: Hawkins, Thomas, McKeown